IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2007 DEC 19  PM 4: 40
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| SUSAN STEEG, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. A-06-CA-184-LY |
| | § | |
| | § | |
| TEXAS DEPARTMENT OF AGING & | § | |
| DISABILITY SERVICES, TEXAS | § | |
| DEPARTMENT OF STATE HEALTH | § | |
| SERVICES, TEXAS DEPARTMENT OF | § | |
| ASSISTIVE & REHABILITATIVE | § | |
| SERVICES, AND TEXAS | § | |
| DEPARTMENT OF FAMILY & | § | |
| PROTECTIVE SERVICES, | § | |
| | § | |
| DEFENDANTS. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court are Defendant's Motion for Summary Judgment filed October 1, 2007 (Clerk's Document 35), Plaintiff's Response to Defendants' Motion for Summary Judgment filed October 22, 2007 (Clerk's Document 43), Defendants' Reply to Plaintiff's Response to Motion for Summary Judgment filed October 26, 2007 (Clerk's Document 48), Defendants' Objections and Motion to Strike Plaintiff's Summary Judgment Evidence filed October 26, 2007 (Clerk's Document 49), Plaintiff's Response to Defendants' Objections and Motion to Strike Plaintiff's Summary Judgment Evidence filed December 6, 2007 (Clerk's Document 51), and Defendants' Reply to Plaintiff's Response to Defendants' Objections and Motion to Strike Plaintiff's Summary Judgment Evidence filed December 7, 2007 (Clerk's Document 52).

After considering the motions, responses, replies, summary-judgment proof, case file, and applicable law, the Court will grant the motion for summary judgment as to all Defendants on all Steeg's claims. Steeg's religious-discrimination claims against DFPS, DADS, and DARS fail because Steeg has produced no evidence raising a fact issue as to whether those Defendants discriminated against her based on religion. Steeg's disability-discrimination claims against DFPS, DADS, and DARS fail because Steeg has produced no competent evidence raising a fact issue as to whether those Defendants discriminated against her based on her disability. Finally, Steeg's gender-discrimination claim against DFPS and disability-discrimination claim against DSHS fail because Steeg has produced no evidence demonstrating those Defendants' legitimate, nondiscriminatory reasons for not hiring her were pretextual.

## I. Background

### A. Factual and Procedural Background[1]

In 2004 the Texas Legislature altered Texas health and human services by abolishing twelve agencies and consolidating them into five new agencies. Implementing the Legislature's changes required many changes at those agencies, including consolidation of the agencies' legal departments. The five new agencies were created from scratch with a top-down approach. The Texas Health and Human Services Commission (HHSC) was created as an umbrella agency to oversee the other new agencies. The four other agencies are Defendants Texas Department of State Health Services (DSHS), Texas Department of Aging and Disability Services (DADS), Texas Department of Assistive and Rehabilitative Services (DARS), and Texas Department of Family and Protective

---

[1] In evaluating this motion for summary judgment, the Court views the facts and inferences to be drawn therefrom in the light most favorable to Steeg, the nonmovant. *See Commerce & Indus. Ins. Co. v. Grinell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002).

Services (DFPS).

Plaintiff Susan Steeg, an attorney, is a Jewish woman with multiple sclerosis (MS) who served for twelve years as the General Counsel to the Texas Department of Health (TDH), one of the twelve legacy agencies. Steeg's professional background also included working in private practice, serving as in-house counsel to the Dallas County Hospital District, working as a staff attorney at the TDH, serving as a legal advisor to the Texas Merit System Council, and working as a staff attorney for East Texas Legal Services. During her twelve years as General Counsel to the TDH, Steeg oversaw more than 80 programs and supervised a staff of up to 42 people, including up to 20 lawyers. During her tenure the TDH budget ranged from $1 to $7 billion, and TDH personnel ranged from 4,500 to 6,000 persons.

The new agencies officially came into being on September 1, 2004, but the top-down hiring process began earlier in 2004. In late spring 2004, HHSC Chief Counsel Steve Aragon and the HHSC Human Resources Department organized interviews for the General Counsel positions at the four "operating" agencies: DSHS, DARS, DADS, and DFPS. One notice was posted for all four positions.[2] Aragon authored the job posting and interview questions, and he and his staff pre-

---

[2] Because the job posting's contents have been the subject of much argument, the Court quotes the posting's "Knowledge, Skills, and Abilities Required" section here:

> Knowledge of legal principles, practices, and proceedings; Knowledge of federal and state laws affecting agency operations and administration; Knowledge of agency policies, rules, regulations, and procedures; Knowledge of state and federal legislative processes; Knowledge of the principles and practices of management; Skill in organizing and expressing complex legal problems in a clear and concise manner sufficient to communicate orally and in writing with people of various backgrounds; Strong analytical, writing, management, and problem-solving skills; Effective leadership, organizational, and presentation skills; Strong ethical and decision making skills; Skill in dealing tactfully with clients and staff; Ability to use computerized legal research systems; Ability to prepare legal documents, conduct

screened the applicants.

Steeg applied for the general counsel position at DSHS, DARS, DADS, and DFPS. The agencies' Chief Operating Officers (COOs) were Randy Fritz, Lawrence Parker, Alvin Miller, and Ben Delgado, respectively. Steeg stated she opted not to apply for the HHSC position because although she felt she had a good relationship with Aragon, she preferred not to work as his general counsel because they had different management styles.

A panel interview was held on July 6, 2004. The agencies had already hired their prospective COOs, to whom each agency's general counsel would report. Aragon and another HHSC representative attended the panel interview, as did each agency's COO. Aragon conducted the interviews by asking each applicant the same series of interview questions, and each COO was permitted to ask questions as well. Each COO either recommended a general counsel applicant to his agency's commissioner or chose the general counsel himself. Each COO only had input into his agency's decision, and apart from informally discussing the lists of applicants and their availability, the COOs did not specifically discuss Steeg amongst themselves.

Steeg knew Fritz and Delgado through years of working with them at state health agencies. She did not know Parker or Miller as well as she knew Fritz and Delgado. Fritz knew Steeg had been diagnosed with MS. The parties dispute whether Delgado knew about Steeg's MS; Steeg states

---

legal research, interpret and apply laws and summarize findings; Ability to prepare and conduct or manage the preparation of cases for trials and hearings; Ability to plan, assign, and/or supervise the work of others; Ability to develop long-term plans and to evaluate the effectiveness of legal staff; Ability to communicate effectively and work collaboratively and cooperatively with people of diverse backgrounds; and Ability to plan, organize and prioritize work and meet deadlines.

(bullets omitted and semicolons added).

she believes they had discussed it, but Delgado stated he did not know about it.  Steeg also asserts Delgado hugged her before her interview in front of the panel and that she found it inappropriate.

Steeg was not selected for the general-counsel position at any of the agencies to which she applied.  On Fritz's recommendation, DSHS selected Cathy Campbell, a Jewish woman, as its general counsel.  On Parker's recommendation, DADS selected Phoebe Knauer, a non-Jewish woman, as its general counsel.  Miller selected Sylvia Hardman, a non-Jewish woman, as DARS's general counsel.  Delgado selected Gerry Williams, a non-Jewish male, as DFPS's general counsel.

Steeg retired on September 1, 2004.  She filed five separate charges of discrimination with the Equal Employment Opportunity Commission on May 17, 2005, alleging that each newly-formed Texas health agency discriminated against her based on her age, religion, gender, and disability when it did not select her for a general-counsel position.  She felt, based on her "years as legal counsel for an agency, when you don't know what the reason is when you're not selected and you are the best candidate for a job, there must be some reason."  The EEOC investigated each of the charges and issued a dismissal and right-to-sue letter.  Steeg filed this lawsuit against HHSC, DSHS, DADS, DARS, and DFPS on March 17, 2006, alleging each discriminated against her based on her age (51), gender (female), religion (Jewish), and disability.  She did not specify her disability in her complaint.  Steeg amended her complaint in July 2006, and amended it again on October 10, 2007.

### B.  *Steeg's Claims and Defendants' Motion for Summary Judgment*

Steeg's Second Amended Complaint (Clerk's Document 39) is the live complaint before the Court.  In it, Steeg dismisses all claims against HHSC, dismisses her gender-and-religion-discrimination claims against DSHS, and dismisses her gender-discrimination claims against DARS and DADS.  Her Second Amended Complaint alleges DFPS discriminated against her based on her

gender in violation of Title VII of the Civil Rights Act of 1964 (Title VII). *See* 42 U.S.C. § 2000e *et seq.* She further alleges DFPS, DADS, and DARS discriminated against her based on her religion in violation of Title VII. Steeg also alleges all four remaining Defendants discriminated against her based on her disability in violation of Section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act, or Act). *See* 29 U.S.C. § 794 *et seq.* Steeg does not specify her disability in this complaint either. Steeg's deposition testimony revealed her disability as MS, and the motion for summary judgment, response, and reply discuss only this alleged disability.

Defendants ask the Court to grant their motion for summary judgment on all Steeg's claims against them. They allege her claims against DSHS are barred by the statute of limitations because she filed her charge of discrimination with the EEOC beyond the 300-day filing window. They also allege Steeg fails to make out her *prima facie* disability-discrimination claims under the Rehabilitation Act because she is not disabled as required by the Act. They point out they have produced evidence of each Defendant's legitimate, nondiscriminatory reasons for not hiring Steeg, and allege Steeg has not presented evidence of pretext or that the Defendants otherwise had discriminatory motives. As discussed more fully below, the Court does not find it necessary to determine whether Steeg timely filed her DSHS charge or whether she is disabled under the Rehabilitation Act. Instead, the Court will grant summary judgment as to all Defendants on all claims because Steeg has failed to produce evidence showing the Defendants discriminated against her.

## II. Analysis

### A. Summary-Judgment Standard

A Court must grant a motion for summary judgment "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue is material if its resolution could affect the outcome of the action." *Commerce & Indus. Ins. Co. v. Grinell Corp.*, 280 F.3d 566, 570 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding whether fact issues exist, the Court "must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* In determining whether there is a genuine dispute as to any material fact, the Court must consider all of the evidence in the record, but does not make credibility determinations or weigh the evidence. *Austin v. Will-Burt Co.*, 361 F.3d 862, 866 (5th Cir. 2004). The movant can meet its burden of demonstrating that there is no genuine issue of material fact on an element of the nonmovant's claim if it "point[s] out to the district court [] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

"The nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The nonmovant may not rely on mere allegations in the pleadings. *Id.* Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise

manner in which that evidence supports his claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d

455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on the court to "sift through the record in

search of evidence" to support the nonmovant's opposition to the motion for summary judgment.

*Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).

Rather, the nonmoving party must set forth specific facts showing the existence of a

"genuine" issue concerning every essential component of its case. *Lusk v. Foxmeyer Health Corp.*,

129 F.3d 773, 777 (5th Cir. 1997). The standard of review "is not merely whether there is a

sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could

find for the non-moving party based upon the record before the court." *See James v. Sadler*, 909

F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986)). If the record as a whole could not lead a rational jury to find for the nonmoving

party, there is no genuine issue for trial and summary judgment is warranted. *Wheeler v. Miller*, 168

F.3d 241, 247 (5th Cir. 1999).

### B. Defendants' Motion to Strike Portions of Steeg's Summary-Judgment Proof

Defendants have objected to portions of Steeg's summary-judgment proof and move to strike

that evidence (Clerk's Document 49). The parties may rest assured the Court appropriately

considered the summary-judgment record in this case and afforded the summary-judgment proof

only the weight and consideration it was due. The Court will overrule Defendants' objections to

Steeg's summary-judgment proof and deny the motion to strike.

### C. Steeg Has Produced No Evidence On Some Claims

Steeg has produced no evidence that Miller or Parker, the interviewers for DARS and DADS,

respectively, knew Steeg had been diagnosed with MS. Accordingly, Steeg has not raised a fact

issue as to whether they discriminated against her because of her alleged disability.  The Court will therefore dismiss Steeg's Rehabilitation Act claims against Defendants DARS and DADS.

The parties dispute whether DFPS interviewer Delgado knew Steeg had MS.  In his deposition, Delgado stated he did not know Steeg had MS.  Steeg, however, stated in her deposition and affidavit that she was "fairly certain [her MS] would have come up," and she "firmly believe[s] that [she] discussed having MS with Mr. Delgado."  Steeg has not directed the Court to evidence besides her unsubstantiated self-serving assertions, speculating Delgado knew Steeg had MS.  This is insufficient summary-judgment proof.  The Court will therefore dismiss Steeg's disability-discrimination claim against DFPS.

The summary-judgment proof establishes that Fritz, the interviewer for DSHS, knew Steeg had been diagnosed with MS.  Steeg's Rehabilitation Act claim against DSHS survives at this stage of the Court's analysis.

Additionally, Steeg has produced no evidence the DFPS, DARS, or DADS interviewers knew she was Jewish.  In their responses to Steeg's charge of discrimination each Defendant stated the interviewers had no knowledge of job candidates' religion.  Steeg has not rebutted this or directed the Court to evidence showing the interviewers knew her religious affiliation or discriminated against her on that basis.  Accordingly, Steeg has not raised a fact issue as to whether DFPS discriminated against her based on religion.  The Court will dismiss Steeg's Title VII claim of religious discrimination against DFPS, DARS, and DADS.

After dismissing the above-mentioned claims, no claims remain against DARS or DADS.  Steeg's disability-discrimination claims against DSHS remains, as does Steeg's gender-discrimination claim against DFPS.

### D. McDonnell Douglas *Burden-Shifting Analysis*

Title VII prohibits an employer from failing or refusing to hire, or otherwise discriminating against, any individual based on her sex or religion. 42 U.S.C. § 2000e-2(a)(1). To resolve a Title VII claim, the Court inquires whether the employer intentionally discriminated against the plaintiff. *Roberson v. Alltell Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). The Rehabilitation Act prohibits discrimination against an otherwise qualified individual with a disability in programs or activities that receive federal funding. 29 U.S.C.A. § 749(a). State agencies qualify as programs or activities under Section 749. *Id.* § 749(b).

Steeg may use either direct or indirect evidence to establish the Defendants intentionally discriminated against her. *Alvarado v. Texas Rangers*, 492 F.3d 605, 612 (5th Cir. 2007). Steeg has not presented direct evidence of gender, religion, or disability discrimination. Because Steeg supports her discrimination claims with circumstantial evidence, the Court analyzes the claims with a "modified *McDonnell Douglas*" burden-shifting framework. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005). Under *McDonnell Douglas*, once Steeg establishes her *prima facie* cases under Title VII and the Rehabilitation Act, a presumption arises that Defendants unlawfully discriminated against her. The burden then shifts to Defendants to present evidence of legitimate, nondiscriminatory reasons for declining to hire Steeg. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If Defendants successfully produce such evidence, the burden of production shifts to Steeg to prove that Defendants' reasons are a pretext for unlawful discrimination. Steeg can survive summary judgment by producing evidence that Defendants' explanations for their hiring decisions are "false or 'unworthy of credence.'" *Burrell v. Dr. Pepper/Seven Up Bottling Group*, 482 F.3d 408, 412 (5th Cir. 2007) (quoting *Laxton v. Gap Inc.*,

333 F.3d 572, 578 (5th Cir. 2003). "An employee's explanation is false or unworthy of credence if it is not the real reason for the employment action." *Id.*

Or, under the modified approach, Steeg can meet her burden of production by evidence showing although Defendants' proffered reasons are true, another motivating factor for not hiring Steeg was her protected characteristic. *See Reeves*, 530 U.S. at 143; *Alvarado*, 492 F.3d at 611.

At all times, however, Steeg bears the burden of persuading the trier of fact that the Defendant intentionally discriminated against her. *See id.* "[T]he plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).[3]

### E. *Steeg's* Prima Facie *Cases Under Title VII and the Rehabilitation Act*

To establish her *prima facie* case under Title VII, Steeg must show (1) she is a member of a protected class; (2) she applied for and was qualified for an available employment position; (3) she suffered an adverse employment action; and (4) a similarly-situated person outside Steeg's protected classes was treated more favorably. *Alvarado*, 492 F.3d at 612. DFPS does not contest Steeg meets the first three requirements.

Steeg's only remaining Title VII claim is against DFPS for gender discrimination. DFPS hired a male for its general-counsel position. Steeg thus meets the fourth requirement, and has

---

[3] Defendants point out that the Fifth Circuit has never applied the *McDonnell Douglas* burden-shifting analysis to a claim brought under the Rehabilitation Act, but they cite cases showing almost every other circuit has done so. This Court sees no reason the widely-accepted *McDonnell Douglas* analysis should not apply to discrimination claims under both statutes, especially because the parties agree the *McDonnell Douglas* analysis applies. *See Reeves*, 530 U.S. at 142 (applying *McDonnell Douglas* analysis to ADEA claims without squarely addressing whether it applied, when parties did not dispute its applicability).

therefore successfully alleged a gender-discrimination *prima facie* case.

To establish her *prima facie* case under the Rehabilitation Act, Steeg must show that she (1) is an individual with a disability; (2) she is otherwise qualified for the job in question; (3) she applied for a job with program or activity that receives federal funding; and (4) she was denied the benefits of employment solely because of her disability. *See* 29 U.S.C. § 749(a); *Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997). Steeg claims DSHS discriminated against her because of her disability–MS. The parties have stipulated DSHS receives federal funding, and DSHS does not deny Steeg was otherwise qualified and that she was denied the benefits of employment. DSHS contends Steeg has not made out her *prima facie* case under the Rehabilitation Act because she is not disabled under the Act. As mentioned above, the Court does not find it necessary to determine whether the summary-judgment proof demonstrates Steeg is disabled under the Rehabilitation Act, because if she established a *prima facie* case of disability discrimination, the summary-judgment proof fails to establish DFPS discriminated against her. In analyzing DSHS's motion for summary judgment, the Court assumes Steeg is disabled under the Act.[4]

## *F. Application*

Steeg has made out a *prima facie* case of gender discrimination against DFPS and has made out a *prima facie* case of disability discrimination against DSHS. The burden now shifts to DFPS and DSHS to produce evidence demonstrating they had legitimate, nondiscriminatory reasons for not hiring Steeg. *See Alvarado*, 492 F.3d at 615-16; *McDonnell Douglas*, 411 U.S. 792, 802 (1973).

---

[4] The Court, however, does take judicial notice that following the alleged discrimination against her, Steeg conducted a successful political campaign, winning an uncontested party primary on March 7, 2006, and accumulating 53.97% of the vote in the November 7, 2006 General Election, defeating two candidates, including the incumbent, for Justice of the Peace, Precinct 3, of Travis County. *See* Fed. R. Evid. 201.

DFPS and DSHS allege they have each set forth legitimate, nondiscriminatory reasons for not hiring Steeg. They point out the interviewing panel considered many factors in hiring general counsels for each of the new agencies. They evaluated legal and experiental qualifications, representation in upper management at each new agency from the former agencies, technical and program knowledge of the applicants, and how that knowledge would best fit each newly-created agency. DFPS and DSHS allege that given these many considerations, they each chose the most appropriate applicant for the position at their agency.

Once DFPS and DSHS produce evidence demonstrating their legitimate, nondiscriminatory reasons for not hiring Steeg, Steeg must produce evidence showing their proffered reasons are pretextual. Or, Steeg may meet her burden of production at this stage by conceding that even though DFPS'S and DSHS's proffered nondiscriminatory reasons are true, a discriminatory reason was also a motivating factor in their decisions not to hire her. *See Machinchick*, 398 F.3d at 352 (describing modified *McDonnell Douglas* analysis in ADEA case).

In her response, Steeg argues DFPS and DSHS have not met their burden of producing legitimate reasons for not hiring her because their reasons are insubstantial and are contradicted by other evidence. Steeg alleges DFPS'S and DSHS's reasons are pretextual because they have been inconsistent and contradict each other. Steeg also argues she should survive summary judgment because she has produced evidence that she was better qualified than the selected job candidates. Steeg does not argue she should survive summary judgment based on the "motivating factor" option of the modified *McDonnell Douglas* analysis.

The Court will examine each of Steeg's remaining claims to determine whether she has met her *McDonnell Douglas* burden of establishing that DFPS'S and DSHS's reasons for not hiring her

were pretextual.

### 1. DFPS

Delgado interviewed Steeg for the general-counsel position at DFPS. Delgado selected Gerry Williams, a male, non-Jewish, non-disabled person, for the position. DFPS satisfied its *McDonnell Douglas* burden by producing evidence establishing its legitimate, non-discriminatory reasons for hiring Williams. DFPS states it chose Williams because he was a better fit for the agency than Steeg, and articulated why Williams was a better fit. Delgado explained he thought Williams was well-qualified in DFPS's program areas because Williams had served for many years as a regional attorney and policy director for DFPS's predecessor agency. Although Williams had never served in an executive-level position, he had served as the agency's acting general counsel for six weeks preceding the hiring process. Delgado had worked closely with Williams during that time and was impressed with Williams's ability and attitude in that position. DFPS's position statement to the EEOC details many ways Williams excelled during his brief stint as acting general counsel.

Delgado stated in his deposition that he believed Steeg was not interested in a position at DFPS because the agency's focus was outside her area of expertise and she expressed a preference to work at a different agency. Delgado also pointed out that he knew Steeg was critical of HHSC Chief Counsel Steve Aragon.

Delgado explained that Williams was actually his third choice for the position. He believed he had three viable candidates for the DFPS position, Phoebe Knauer, Thomas Best, and Williams, whom he ranked in that order. His first choice was Phoebe Knauer because of her extensive experience with that agency, but she was offered and accepted the general counsel position at DADS,

and Delgado never offered her the DFPS position.[5]  Delgado was interested in Best because Best's supervisor had spoken highly of his abilities, but Delgado stated he decided against hiring him after conducting a second interview.[6]

Steeg states she has produced evidence of pretext because she claims DFPS's reasons for selecting Williams fluctuate and change.  She points to differences in language between Delgado's deposition, DFPS's position statement to the EEOC, and DFPS's interrogatory responses.  Steeg relies heavily on  *Burrell v. Dr. Pepper/Seven Up Bottling Group* to support the idea that a plaintiff can survive summary judgment by producing evidence of an employer's inconsistent explanations for its hiring decisions.  482 F.3d 408, 412 (5th Cir. 2007).

In *Burrell*, Dr. Pepper filled its vacant Vice President of Purchasing Department position by hiring Ted Koester, a white male, from outside the company. *Burrell*, 482 F.3d at 409.  Darrell Burrell, an African-American male, had worked as Dr. Pepper's Corporate Purchasing Manager for years and also applied for the vacant vice president position. *Id.*  Burrell and Koester clashed, and Dr. Pepper eventually terminated Burrell's employment. *Id.* at 410.  After receiving his right-to-sue notice from the EEOC, Burrell sued Dr. Pepper for unlawful discrimination in failing to promote, unlawful discrimination for termination based on race, and unlawful retaliation based on previous complaints of racial discrimination. *Id.* at 410-11.  The Fifth Circuit vacated the district court's

---

[5]  The Court notes it would be strange for Delgado to discriminate against Steeg based on her gender when his first-choice candidate was also female.

[6]  The parties dispute whether Best was offered the DFPS general-counsel position.  In his deposition, Delgado stated he "never hired" Best.  In her affidavit, Steeg states Best told her he had been offered the position and turned it down.  Steeg has produced no evidence besides her unsubstantiated self-serving assertions that Best was actually offered the position.  It is also hearsay. It is therefore not proper summary-judgment proof and the Court disregards it.

order granting summary judgment on Burrell's failure-to-promote claim. *Id.* at 417. After reviewing the record, the court concluded a genuine issue of material fact remained regarding whether Dr. Pepper's proffered nondiscriminatory reason for not hiring Burrell was true. *Id.* at 413.

Steeg analogizes the differences in DFPS's and DSHS's hiring-decision explanations to Dr. Pepper's inconsistent explanations for why it did not hire Burrell. Specifically, Dr. Pepper's letter to the EEOC stated it did not hire Burrell because of his lack of purchasing experience, but its motion for summary judgment stated it hired Koester because of his greater bottling experience. *Id.* Steeg claims the different explanations proffered by DFPS vary much more significantly than the *Burrell* differences.

This Court disagrees the *Burrell* court's conclusion applies equally in this case. These are necessarily fact-intensive and specific analyses. The *Burrell* court concluded fact issues remained because its review of the record revealed a reasonable jury might have found Koester in fact did not have greater bottling experience, and Burrell in fact did have purchasing experience. *Id.* 413-15. The *Burrell* court's review of the record revealed a contradiction between the proffered reason and the evidence, instead of a mere difference in wording.

The Court disagrees Steeg has produced evidence of pretext by pointing out the explanation is worded differently in Delgado's deposition, DFPS's position statement to the EEOC, and DFPS's interrogatory responses. DFPS's reasoning for its hiring decision is not inconsistent simply because the agency's explanation was not copied and pasted from one document to the next. DFPS's reasons for hiring Williams and not hiring Steeg are consistent throughout the agency's explanations even if each explanation does not repeat every piece of information. Additionally, the Court does not find contradictions between the record and DFPS's proffered nondiscriminatory reasons for hiring

Williams and not hiring Steeg.

Steeg alleges she has produced evidence of pretext because she was more qualified than Best or Williams. A court can infer pretext if it finds a plaintiff was "clearly better qualified" than a selected applicant. *Odom v. Frank*, 3 F.3d 839, 845-46 (5th Cir. 1993). But courts should not carelessly second guess employers' decisions in this area. "[A]s a general rule judges are not as well suited by training or experience to evaluate qualifications for high level promotion in other disciplines as are those persons who have trained and worked for years in the field of endeavor for which the applicants under consideration are being evaluated." *Id.* at 847.

Delgado and the other COOs found themselves in a unique interviewing situation. The Legislature had entirely reconfigured Texas health agencies. It was unprecedented for agency COOs to conduct a panel interview for five general-counsel positions at once. Delgado explained the unique considerations he faced while choosing the DFPS general counsel; his agency was in transition and he planned to revamp its legal department. He measured candidates' qualifications by more factors than the size of the legal department the candidate had run in the past. The evidence shows the applicant pool had been pre-screened and all the candidates were well qualified. Steeg fails to produce evidence of pretext by declaring herself more qualified for every one of these positions because she previously ran a large agency's legal department.

Steeg points out that none of DFPS's reasons for not hiring her were contained in the selection criteria in the general-counsel job posting. She states the job posting did not list having specific programmatic knowledge as an important qualification. Texas health agencies were undergoing a radical change and upper management chose to post one notice for four general-counsel positions. The knowledge, skills, and abilities listed in the posting were necessarily broad because

the posting advertised positions at four very different agencies. Selectors' decisions obviously would have been shaped by applicants' specific knowledge, skills, and abilities or lack thereof regarding their agency's focus. Based on what Delgado knew of Steeg's knowledge, skills, and abilities, he thought she was not interested in the General Counsel position at his agency. Based on his personal evaluation of Williams's knowledge, skills, and abilities, Delgado thought Williams would fit well in the position. Even if Delgado was wrong about Steeg's interest in the agency, that does not establish evidence of pretext.

Finally, Steeg points out Delgado hugged her in front of the interview panel, which she viewed as patronizing and inappropriate. Although the hug might be considered inappropriate, its occurrence does not establish evidence of pretext.

Steeg has produced no evidence that DFPS's legitimate, nondiscriminatory reasons for not hiring her are pretextual. Nor has she produced evidence showing discriminatory motives influenced her non-selection. The Court will therefore grant DFPS's motion for summary judgment as to her gender discrimination claim against it.

### 2. DSHS

Fritz interviewed Steeg for the general counsel position at DSHS. Fritz recommended Cathy Campbell, a non-disabled Jewish female, for the position. DSHS satisfied its *McDonnell Douglas* burden by producing evidence establishing its legitimate, non-discriminatory reasons for hiring Campbell. Fritz recommended Campbell for the position because he thought the agency's management needed representation from Campbell's previous employer, the former Texas Department of Mental Health and Mental Retardation (MHMR). He also valued Campbell's experience with human resources and legal issues pertaining to mental health. He thought

18

Campbell's and Steeg's backgrounds and interviews were roughly comparable, but the content of Campbell's background made the difference.

Again, Steeg alleges she has produced evidence of pretext because DSHS provided different explanations for hiring Campbell in Fritz's deposition, its motion for summary judgment, contemporaneous selection documentation, its position statement to the EEOC, and responses to interrogatories. Those sources, however, though differently worded, are not inconsistent.

Similarly to DFPS's position statement, DSHS's position statement includes details about her background that made her attractive to the agency. The statement mentions Campbell's favorable responses to interview questions, which Steeg characterizes as a "shift" in its explanation because Fritz stated in his deposition that Campbell and Steeg comported themselves comparably during their interviews. But how they comported themselves is not the same as the content of their answers to interview questions. Campbell's answers would have alerted Fritz to her superior background in the program areas he sought. These explanations are consistent and do not manifest pretext.

Steeg also argues DSHS's reasons for selecting Campbell do not comport with the original selection criteria because the job posting does not explicitly state the positions required knowledge of a specific programmatic area. According to Steeg, if knowledge or experience in a specific area were required qualifications, they "*would*" have been included in the job posting's "Knowledge, Skills, and Abilities" section. As discussed above, the Court does not believe juxtaposing the general nature of the job posting with the agency's specific reasons for hiring someone produces evidence of pretext.

Steeg argues she was more qualified than Campbell based on programmatic knowledge. As

the Court discussed above, it will not second-guess the interviewer's evaluation of which applicant was best qualified for his agency, and her argument fails to adduce evidence of pretext.

Finally, Steeg argues Fritz's explanation that he hired Campbell because he wanted MHMR representation in upper management is suspect because only one other person in DSHS upper management was hired from MHMR. This argument also fails to show pretext. Fritz adequately explained why he specifically wanted legal representation from MHMR. The DSHS General Counsel would run a department that dealt with issues that had also faced the legacy mental health agency. The nature of mental health work meant the mental health general counsel would face human-resources legal issues that other agencies did not face. Campbell's background included that specific experience and Steeg's did not.

Steeg has produced no evidence that DSHS's legitimate, nondiscriminatory reasons for not hiring her are pretextual. Nor has she produced evidence showing discriminatory motives influenced her non-selection. The Court will therefore grant DSHS's motion for summary judgment as to Steeg's disability discrimination claim against it.

### III. Conclusion

With regard to Defendants' Objections and Motion to Strike Plaintiff's Summary Judgment Evidence (Clerk's Document 49), **IT IS ORDERED** that Defendants' objections are **OVERRULED** and their motion to strike is **DENIED.**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Clerk's Document 35)

is **GRANTED** and all of Steeg's claims against Defendants are **DISMISSED WITH PREJUDICE.**

SIGNED this _____ day of December, 2007.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE